**Robin (Wren) LECHIEN,**
**Appellant–Petitioner,**

v.

**Michael W. WREN, Appellee–**
**Respondent.**

No. 48A02–1007–DR–882.

Court of Appeals of Indiana.

July 26, 2011.

Jane G. Cotton, Anderson, IN, Attorney for Appellant.

Jason A. Childers, Angela Warner Sims, Hulse Lacey Hardacre Austin, Sims & Childers, P.C., Anderson, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Robin Lechien ("Mother") appeals the trial court's order determining that Nathan Lechien has repudiated his relationship with Michael Wren ("Father") and

reducing Father's weekly child support obligation to $69.00. Wife raises two issues, which we revise and restate as:

I. Whether the evidence supports the trial court's determination that Nathan has repudiated his relationship with Father; and

II. Whether the court erred in modifying Father's weekly child support obligation.

We affirm in part, reverse in part, and remand.

The relevant facts follow. Father and Mother were married and had two children, Brittany, born on October 26, 1987, and Nathan, born on July 18, 1991. Mother filed a petition for dissolution of marriage in September 1999, and the trial court entered a decree of dissolution in April 2000. The court awarded physical custody of Brittany and Nathan to Mother.

In January 2008, the court entered a nunc pro tunc order that Mother's maiden name of Lechien be restored to her. Also in January 2008, the court ordered Father to pay child support for Nathan in the amount of $177 per week.

In 2009, Nathan filed a petition to have his last name changed from Wren to Lechien. During the hearing on his request, Nathan acknowledged that by changing his name a judge could later decide that he was repudiating his father and that he did not want any help from him and that support could end.

In May 2010, Mother filed a Petition to Modify and Request for a Higher Educational Support Order in which she alleged that Nathan would be living with her while attending college at IUPUI and requested a modification of support and a higher educational support order allocating the college expense between Father, Mother, and Nathan. The court held a hearing on June 8, 2010, at which Father, Mother,

Nathan, and Brittany testified and Father and Mother submitted child support worksheets. On June 25, 2010, the court entered an order containing findings and conclusions which provides in part:

## I.

### FINDINGS

1. The parties were divorced on April 3, 2000.

2. Two children were born to this marriage, namely BRITTANY WREN (DOB 10/26/87) and NATHAN WREN (DOB 7/18/91).

3. The child, BRITTANY, is emancipated and [Father] currently pays child support in the sum of $177.00 per week.

4. Nathan is 19 years old and lives with [Mother]. He will attend IUPUI in the Fall of 2010, but will continue to live with [Mother] while in college.

5. Nathan and [Father] have had a troubled relationship since the divorce, with [Father] having intermittent Parenting Time and none since December 2008.

6. [Father] did send a birthday card to Nathan in 2009 on Nathan's 18th birthday and Nathan acknowledged it by E–Mail. Other than that communication, [Father's] only contact with Nathan was when Nathan went to [Father's] office to seek money for his higher education.

7. Nathan did not have any discussion with [Father] about higher education.

8. In 2009, Nathan did not acknowledge Father's Day or [Father's] birthday.

9. Upon attaining the age of 18, Nathan filed a Petition for Change of

Name in the Madison Circuit Court, and in spite of [Father's] appearance in Court and the Judge's warning of the possible adverse effects of his action upon receiving college money from [Father], cause[d] his name to be changed to [Mother's] maiden name, "Lechien".…

10. Nathan testified that nothing would ever make him change his name back to "Wren". It should be noted that [Father] has no other sons which the Court finds to be particularly hurtful on Nathan's part because Nathan did use the fact that there were very few Lechien's [sic] to carry on that name, to justify changing his name to Lechien.

11. The child support factors for Nathan are as follows:

(a) [Father's] gross weekly income    $1,883.00

(b) [Mother's] gross weekly income    $1,111.00

(c) [Father's] costs of health per week    $ 3.00

## II.

## CONCLUSIONS

A. Pursuant to Indiana case law, Nathan, an adult child, has repudiated his relationship with [Father] and is not entitled to college expense contribution from [Father], Michael W. Wren.

B. There should be a modification of [Father's] duty to pay child support to [Mother] for Nathan.

C. Six Percent Rule should apply pursuant to the Calculation Sheet attached to this Order.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by this Court as follows:

1. The child of the parties, Nathan Lechien, has repudiated the father-son relationship and, thus, has forfeited any college expense funds from [Father].

2. The child support order for Nathan is modified. [Father] shall pay $69.00 per week, commencing June 25, 2010.

3. The 6% Rule shall apply per the attached Child Support Calculator.

Appellant's Appendix at 15–16. Additional facts will be discussed as necessary.

■■ Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *In re Guardianship of Phillips*, 926 N.E.2d 1103, 1106–1107 (Ind.Ct.App.2010) (citing *Leever v. Leever*, 919 N.E.2d 118, 122 (Ind.Ct.App.2009)); *see also Tew v. Tew*, 924 N.E.2d 1262, 1264–1265 (Ind.Ct.App.2010), *trans. denied.* We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255–1256 (Ind.Ct.App.2010). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Norris v. Pethe*, 833 N.E.2d 1024, 1032–1033 (Ind.Ct.App. 2005). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *In re Guardianship of Phillips*, 926 N.E.2d at 1107. We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. *Id.*

## I.

The first issue is whether the evidence supports the trial court's determination that Nathan has repudiated his relationship with Father. Mother argues that "[t]he evidence does support the findings, but the findings do not support the judgment." Appellant's Brief at 7. Mother argues that "in *McKay* [*v. McKay*, 644 N.E.2d 164, 166 (Ind.Ct.App.1994)], the rejection of the parent by the child was extreme." *Id.* Mother points out that, although not part of the court's findings, much of the testimony regarding the deterioration of the relationship between Nathan and Father "was not contested by Father whatsoever." *Id.* at 11. Mother argues that "there was very little effort on the part of [Father] to have a relationship with Nathan" and that "[i]n fact, Nathan had initiated most of the contact with [Father], and it was [Father] who rejected Nathan." *Id.* at 13. Mother further argues that Nathan had a legal right to change his last name and that "[a]lthough the name change may have been inspired, at least partially, by the poor relationship that Nathan had with [Father], there is no precedent that says a name change, standing alone, constitutes repudiation of the parent-child relationship." *Id.* at 14. Mother also argues that "[i]t is presumptuous and somewhat discriminatory to deprive Nathan of college assistance from [Father] due to the fact that he changed his last name" and that "Nathan is obviously very loving and protective of his mother, and taking her maiden name (which she currently carries) should be considered more of a tribute and thank you to her than it should be considered a rejection of [Father]." *Id.* at 14–15.

Father argues that the trial court properly found that Nathan repudiated his relationship with him. Father points to Nathan's successful petition to change his last name and argues that "[s]ince the summer of 2009, Nathan has refused to have any communications with" him. Appellee's Brief at 6. Father also argues that "Nathan's motivation is money; not reconciliation, as demonstrated by the fact that his only communication with [Father] since 2009 was when he showed up at [Father's] work and requested money for college." *Id.* at 7.

Repudiation of a parent is "a complete refusal to participate in a relationship with his or her parent." *Scales v. Scales,* 891 N.E.2d 1116, 1119 (Ind.Ct.App. 2008) (citation omitted). Under certain circumstances, repudiation will obviate a parent's obligation to pay certain expenses for the child, including college expenses. *Id.*

> Under Indiana law, there is no absolute legal duty on the part of parents to provide a college education for their children. However, the statutory authorization for the divorce court to order either or both parents to pay sums toward their child's college education constitutes a reasonable manner in which to enforce the expectation that most families would encourage their qualified children to pursue a college education consistent with individual family values. In determining whether to order either or both parents to pay sums toward their child's college education, the court must consider whether and to what extent the parents, if still married, would have contributed to the child's college expenses.

*Id.* (citing *McKay v. McKay,* 644 N.E.2d 164, 166 (Ind.Ct.App.1994) (citations omitted)).

In *McKay,* this court adopted the approach taken by a Pennsylvania court, which held that "where a child, as an adult over eighteen years of age, repudiates a parent, that parent must be allowed to dictate what effect this will have on his or

her contribution to college expenses for that child." *Id.* (citing *McKay,* 644 N.E.2d at 166 (citing *Milne v. Milne,* 383 Pa.Super. 177, 556 A.2d 854, 856 (1989))). The *McKay* court reiterated the objective outlined by the *Milne* court and concludes:

> [A]dult children who willfully abandon a parent must be deemed to have run the risk that such a parent may not be willing to underwrite their educational pursuits. Such children, when faced with the answer "no" to their requests, may decide to seek the funds elsewhere; some may decide that the time is ripe for reconciliation. They will not, in any event, be allowed to enlist the aid of the court in compelling that parent to support their educational efforts unless and until they demonstrate a minimum amount of respect and consideration for that parent.

*Id.* (citing *McKay,* 644 N.E.2d at 167 (quoting *Milne,* 556 A.2d at 866)). The court in *McKay* also provided:

> [W]e certainly will not consider pre-majority attitudes and behavior, as we all recognize that the maturity and restraint which can be expected of adults is not appropriately applied to evaluate children. But to extend this parental amnesty beyond the age of majority would be irresponsible.
>
> By *college age,* children of divorced parents must be expected to begin to come to terms with the reality of their family's situation. They must begin to realize that their attitudes and actions are their individual responsibilities. Whatever their biases and resentments, while one can understand how they got that way, when they become adults it is no longer appropriate to allow them to stay that way without consequence. One of a parent's main duties in raising a child is to teach him that he must take responsibility for his actions.

*Id.* (citing *McKay,* 644 N.E.2d at 167–168 (quoting *Milne,* 556 A.2d at 861–862) (emphasis added)).

Nathan turned eighteen years old on July 18, 2009. At the June 8, 2010 hearing, Father testified that he sent a birthday card to Nathan in July 2009, and Nathan testified that he acknowledged the card by sending Father a text. Father testified that he has seen Nathan several times when driving, that he has waved at Nathan, and that Nathan did not wave back. Father testified that he did not hear from Nathan for Father's Day or his birthday, and Nathan indicated that he has not acknowledged Father's Day for a few years. When Father found a report card for Nathan left in his door, he sent a text message to Nathan saying that he was proud of his grades, and Nathan did not respond. Sometime in early 2010, Nathan went to Father's workplace to request money for school and spoke with Father in the parking lot. Father further indicated that he had not had any visitation-type contact with Nathan since December 2008.

Father also testified that he had received several text messages from Mother, told her that the children were old enough to communicate with him without her involvement, and asked her to not contact him unless it was an emergency. Father indicated that Mother continued to do so, and that he "did respond to her in a very ugly manner. Trying to be a little more to the point about it. . . ." Transcript at 89. Father received a voice message from Nathan at work in which Nathan "was not very happy and very rude and upset with" Father. *Id.* at 90.

As an adult Nathan petitioned to have his last name changed to Mother's maiden name. Father learned from a notice published in the local newspaper that Nathan had petitioned the court to change his name, and Nathan did not directly notify

Father of his plans. Nathan acknowledged, during the hearing on his petition to change his name, that by changing his name a judge could later decide that he had repudiated Father and that he did not want any help from Father and that support could end. Nathan testified that he would not change his name back to Wren.

Based upon our review of the evidence and testimony most favorable to the judgment, we cannot say that we are left with a firm conviction that a mistake has been made or that the evidence does not support the trial court's conclusions and determination that Nathan has repudiated his relationship with Father, relieving Father of any further responsibility to contribute toward college expenses incurred by Nathan. *See Scales,* 891 N.E.2d at 1118–1120 (affirming the trial court's determination that two children had repudiated their relationship with their mother); *Norris,* 833 N.E.2d at 1032–1035 (holding that the evidence supported the trial court's finding that the child repudiated the child's relationship with the father, which in turn supported the trial court's conclusion that the father's obligation to pay the child's college expenses was obviated); *McKay,* 644 N.E.2d at 166–168 (holding that the child had repudiated his relationship with his father and that the repudiation of the relationship relieved the father of his responsibility to pay for the child's college expenses).

## II.

The second issue is whether the court erred in modifying Father's weekly child support obligation from $177.00 to $69.00.

Generally, the modification of a child support order is governed by Ind.Code § 31–16–8–1, which provides in part:

(a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31–16–7–1

or IC 31–1–11.5–9(c) before their repeal) may be modified or revoked.

(b) Except as provided in section 2 of this chapter, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Mother argues that the court abused its discretion when it deviated from the Indiana Child Support Guidelines (the "Support Guidelines") without just cause. Specifically, Mother argues that the court "only gave credit 19 weeks per year that Nathan lives at home" and "based child support on that number." Appellant's Brief at 15. Mother argues that "Nathan has always lived with [her], and planned to continue [ ] living there as he attended IUPUI." *Id.* Mother also argues that there was "no evidence that Nathan is supporting himself or is capable of doing so" and "[t]here is nothing in the Indiana Child Support Guidelines that would warrant a deviation from child support." *Id.* at 16.

Father argues that the trial court properly modified his child support obligation. Father points to Support Guideline 8, which addresses extraordinary expenses, and Ind.Code § 31–16–6–2, which addresses educational support orders, and argues that he "agrees that an educational ex-

pense order and child support order are separate and distinct" but that he "disagrees that the distinction remains as clear in a case where a child is attending college but chooses to live at home." Appellee's Brief at 8–9. Father argues that the Support Guidelines do not address "whether there should be any consideration given to modifying a non-custodial parent's child support obligation when that parent is relieved from contributing to a child's post-secondary education expenses and the child lives at home while attending college." Id. at 9. Father argues that "in a case where repudiation is found and the non[-]custodial parent is relieved from contributing to the child's post-secondary education expense, [he] contends that the distinction of who is providing the child's room and board is material," that "[i]f the child lives away from home while attending college, the non[-]custodial parent is fully relieved from contributing to the child's post-secondary education expenses," and that "[h]owever, if the child lives with the custodial parent, the finding of repudiation is circumvented to the extent that the non[-]custodial parent's child support obligation includes, in essence, the child's room and board." Id. at 9–10.

We note that this court has stated, as argued by Mother, that while Indiana law recognizes that a child's repudiation of a parent under certain circumstances will obviate a parent's obligation to pay certain expenses, including college expenses, any such repudiation is not a "release of a parent's financial responsibility to the payment of child support. . . ." Bales v. Bales, 801 N.E.2d 196, 199 (Ind.Ct.App.2004), reh'g denied, trans. denied. "Payment of child support is not the legal equivalent of contributing to a child's college expenses." Id. "While there is statutory authority for a dissolution court to order either or both

parents to pay sums toward their child's college education, there is no absolute duty on the part of parents to provide a college education for their children." Id. "In contrast, parents have a common law duty to support their children. This duty exists apart from any court order or statute. A parent's obligation to pay child support generally continues until the child reaches twenty-one years of age." Id. (citations omitted). Moreover, we held that repudiation is not an acceptable justification to abate support payments for a child less than twenty-one years of age. See id. at 199–200.

Next, we note that the parties submitted child support worksheets at the June 8, 2010 hearing. The worksheet submitted by Mother indicated that Father's weekly gross income was $1,883 and that her weekly gross income was $1,111, and the worksheet calculated Father's basic support obligation to be $191.19 per week. Mother's worksheet did not show any adjustment due to the fact that Nathan would be attending college while living at home with her.

The worksheet submitted by Father indicated that his weekly gross income was $1,593 and that Mother's weekly gross income was $1,189.43. In addition, Father attached a post-secondary education worksheet ("PSEW") indicating that Nathan lived at home for nineteen weeks per year and thus that Father's weekly support obligation should be 36.5385% of the amount of the support obligation if Nathan resided with Mother for all fifty-two weeks per year.[1] Father's worksheet calculated his child support obligation to be $62.34 per week. At the hearing, counsel for Father stated Father's position that "anything above" the amount Father would pay if Nathan were residing away from home on

---

1. Nineteen weeks divided by fifty-two weeks equals approximately 36.5385%.

campus during the school year "really is contribution to his college expenses[,] that being room and board." Transcript at 100. Father indicated that he looked at the IUPUI calendar "in determining about how many weeks that [Nathan] would be home if he was ... a traditional on campus student," which Father stated in his submitted worksheets was nineteen weeks. *Id.* at 101. When asked on cross-examination why he wanted to pay a fraction of the normal child support, Father testified: "Well if he was going to college—if he was going to live on campus there would be campus time—all that campus time as far as I'm concerned, if he was at home and in college that becomes college time as far— is what we're looking at here so I don't believe I should have to pay any college expenses." *Id.* at 104.

In its June 25, 2010 order, the court found that Father's weekly gross income was $1,883, that Mother's weekly gross income was $1,111, which were the income amounts proposed by Mother, and that Father's weekly health insurance cost for Nathan was $3.00. The child support worksheet attached to the order, which does not include a PSEW, indicates that Father received a credit based upon the fact that Nathan planned to live at home for nineteen, instead of fifty-two, weeks per year. The court ordered that Father pay child support in the amount of $69.00 per week.[2]

Support Guideline 3(G), which sets forth adjustments to a parent's child support obligation, provides in part: *"If the parents have a child who is living away from home while attending school,* his or her child support obligation will reflect the ad-

justment found on Line J of the [PSEW] (See Support Guideline 8)." Ind. Child Supp. 3(G)(1) (emphasis added). Support Guideline 8(b) provides in part:

A determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. *Room and board will also be included when the student resides on campus or otherwise is not with the custodial parent.*

The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and a reduction of the Basic Child Support Obligation attributable to the child in question will be required *when the child resides on campus or otherwise is not with the custodial parent."*

(Emphases added).

Support Guideline 8(c) provides in part:

When the student remains at home with the custodial parent while attending an institution of higher learning, generally no reduction to the noncustodial parent's support obligation will occur and Section Two of the Worksheet need not be completed.

We observe that both Support Guidelines 3(G) and 8 expressly state that a parent's basic child support obligation will be reduced if or when the child is living away from home. Conversely, if or when the child is not living away from home or resides with the custodial parent, then the support obligation would generally not be reduced. This result is not inconsistent with Ind.Code § 31–16–6–2,[3] which is ap-

---

**2.** The trial court's attached worksheet calculated the weekly support obligation to be $68.75.

**3.** Ind.Code § 31–16–6–2, which relates to educational support orders, provides in part:

"If the court orders support for a child's educational expenses at a post-secondary educational institution ..., the court shall reduce other child support for that child that: (1) is duplicated by the educational support order;

plicable when the court orders support for post-secondary educational expenses and provides for a reduction of child support to the extent it is duplicated by the educational support order. Here, because the court did not order support for post-secondary educational expenses, no part of Father's child support obligation is or could be duplicated.

▆▆▆ Evidence was presented at the June 8, 2010 hearing that Nathan was going to live at home with Mother while he attended college. Based upon the record and the Support Guidelines, we conclude under the circumstances that the trial court erred in adjusting Father's support obligation and in noting in its worksheet that Nathan would be residing with Mother for nineteen of fifty-two weeks per year. This result is consistent with the general duty of a parent to provide support for a child until the child is twenty-one years old, and as previously stated repudiation is not a release of a parent's financial responsibility for the payment of child support and is not an acceptable justification to abate support payments for a child less than twenty-one years of age. *See Bales,* 801 N.E.2d at 199–200. While it may be true that a support obligation may be reduced if a child were to reside on campus or away from home to attend school, the Support Guidelines do not provide for such a reduction if the child continues to reside with the custodial parent, and we decline

to hold under the circumstances here that Father's support obligation is reduced for the time Nathan could, but does not, live away from Mother's home in order to attend college. We reverse the trial court's modification of Father's weekly child support obligation to $69.00 and remand with instructions to enter a child support order consistent with this opinion. The order should include the provision that Father's obligation to pay support will automatically cease when Nathan attains the age of twenty-one, regardless of whether Nathan in still attending college at that point.[4]

For the foregoing reasons, we affirm the trial court's determination that Nathan repudiated his relationship with Father, reverse the court's modification of Father's child support obligation from $177.00 to $69.00, and remand with instructions to enter a child support order consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.

---

and (2) would otherwise be paid to the custodial parent."

4. Per Ind.Code Ann. § 31–16–6–6(a) (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011), the obligation to pay child support extends beyond age twenty-one only if the child is incapacitated or to the extent that it can be deemed an educational

expense. *Hinesley–Petry v. Petry,* 894 N.E.2d 277 (Ind.Ct.App.2008), *trans. denied.* Having concluded that the support paid for a child who attends college while living at home is in the nature of child support and not an educational expense, it necessarily follows that Father's obligation to pay support will automatically cease when Nathan attains the age of twenty-one.