**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 29 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT G. FORBES**
Forcum & Forbes LLP
Hartford City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DOUGLAS J. SMITH, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 27A02-1107-DR-642 |
| | ) | |
| GAIL LYNNETTE SMITH, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Warren Haas, Judge
Cause No. 27D03-1004-DR-133

**February 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Douglas Smith ("Father") appeals the trial court's child support order. Father raises two issues, which we revise and restate as whether the court erred in modifying Father's child support obligation. We affirm in part, reverse in part, and remand.

The relevant facts follow. Father and Gail Smith ("Mother") were married and had two children, D.S., born on April 8, 1989, and C.S., born on October 25, 1991. Following the dissolution of the parties' marriage in 2001, Father had custody of D.S. and Mother had custody of C.S. In 2005, the parties entered an agreed entry which provided that Mother was to have sole custody of D.S. and C.S.

On February 4, 2008, the court entered an order finding that D.S. had repudiated Father and providing that Father "shall no longer pay support nor . . . post-secondary education for [D.S.]." Appellant's Appendix at 29. The court further ordered Father to continue to pay child support for C.S. and established the amount to be $153 per week. On March 19, 2009, the court entered an agreed order in which it modified Father's child support obligation for C.S. to $111 per week.

On October 29, 2009, Father filed a Petition to Terminate Support Order in which he alleged that C.S. "is now 18 years of age and has also repudiated [Father]" and that "[c]onsequently, the order of support with respect to [C.S.] should also be terminated." Id. at 36. On January 29, 2010, the court held a hearing on Father's petition.[1] On

---

[1] The October 29, 2009 petition was filed and the January 29, 2010 hearing was held under cause number 27D02-0410-DR-163 ("Cause No. 163") in the Grant Superior Court 2. In April 2010, upon a motion for change of judge filed by Father, the case was transferred from Cause No. 163 to cause number 27D03-1004-DR-133 in the Grant Superior Court 3, the cause under which the court's January 27, 2011 and June 17, 2011 orders were issued and from which this appeal was taken. On August 26, 2010, the parties requested that the court listen to a tape of the hearing, which the court granted, and the court provided the parties until September 17, 2010 to submit affidavits.

September 17, 2010, Father submitted an affidavit stating that he requested D.S. to ask C.S. if she would provide her cell phone number to Father, that D.S. advised Father that C.S. stated that D.S. was not to provide Father with that number, and that consequently, Father continues to believe that any obligation of support by Father should be terminated effective with C.S.'s eighteenth birthday.

On January 27, 2011, the court entered an Order Denying Father's Petition to Terminate Support. The court found that "Father did not allege . . . nor present any evidence whatsoever at the evidentiary hearing held on January 29, 2010, . . . that [C.S.] was emancipated for any reason recognized under Indiana law." Id. at 41. The court found that "[i]n the January 29, 2010, evidentiary hearing . . . , Father's only basis for terminating his obligation to support [C.S.] was that she had repudiated Father and the Court had terminated support for [D.S.] on that basis." Id. at 43. The court further found: "On January 29, 2010, the undisputed evidence was that [C.S.] was 18 years of age; [C.S.] was a Senior at Mississinewa High School with a G.P.A. of 3.0; that she was living with [Mother]; and that she had been accepted to attend Ball State University in the Fall." Id. The court denied Father's petition, ordered Father to "immediately resume paying his $153 per week in child support obligation,"[2] and scheduled a hearing to determine the amount Father owed and how he is to pay his arrearage. Id.

On February 14, 2010, Father filed a Motion to Correct Errors and a Petition to Modify Support.[3] In the Motion to Correct Errors, Father argued that the court erred in

_____

[2] The court noted that it had terminated a previous income withholding order on December 2, 2009, at Father's request and prior to the evidentiary hearing.

[3] This Petition to Modify Support is not included in the record.

3

ordering him to immediately resume paying his $153 per week support obligation, that the court failed to address the issue of repudiation or modification upon C.S. attending college, and that the order violated the Equal Protection Clause of the Fourteenth Amendment. After a hearing on June 16, 2011, the court entered an order file-stamped on June 17, 2011, granting in part Father's motion and petition. Specifically, the court granted in part Father's Motion to Correct Errors and found that in denying Father's petition in its January 27, 2011 order the court had stated that Father's last support obligation was $153 per week, that in fact the court had last set Father's support obligation in the sum of $111 per week, and that all references in the January 27, 2011 order denying Father's petition to terminate support are modified to reflect the $111 per week amount. The court denied Father's Motion to Correct Errors in all other respects. The court also found that at the June 16, 2011 hearing the parties presented evidence on Father's Petition to Modify Support, and the court granted in part Father's petition and ordered that Father's support obligation be modified to the sum of $99 per week. The court further found that, "[b]ecause of the delays in resolving Father's October 29, 2009, Petition to Terminate Support Order, the $99 per week order was made effective retroactive to the payment due on Friday, October 30, 2009."[4] Id. at 48.

Before addressing Father's arguments, we note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of

_____

[4] The court also stated: "To be clear, the hearing did not include a request for post-secondary educational expenses." Appellant's Appendix at 48.

4

review, that is, we may reverse if the appellant establishes *prima facie* error. Zoller v. Zoller, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). This rule was established so that we might be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. Wright v. Wright, 782 N.E.2d 363, 366 (Ind. Ct. App. 2002). Questions of law are still reviewed *de novo*, however. McClure v. Cooper, 893 N.E.2d 337, 339 (Ind. Ct. App. 2008).

Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. In re Guardianship of Phillips, 926 N.E.2d 1103, 1106-1107 (Ind. Ct. App. 2010) (citing Leever v. Leever, 919 N.E.2d 118, 122 (Ind. Ct. App. 2009)). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. Julie C. v. Andrew C., 924 N.E.2d 1249, 1255-1256 (Ind. Ct. App. 2010). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Norris v. Pethe, 833 N.E.2d 1024, 1032-1033 (Ind. Ct. App. 2005). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Id. The specific findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. In re Guardianship of Phillips, 926 N.E.2d at 1107. We review questions of law *de novo* and owe no deference to the trial court's legal conclusions. Id.

5

The issue is whether the trial court erred in modifying Father's child support obligation. Father essentially argues that the court erred in failing to reduce his weekly child support obligation due to the fact that C.S. lives in university housing and not with Mother for a portion of the year. Father argues that he presented evidence that demonstrates that "all of [C.S.'s] tuition and fees and all of the room and board except $2,482.00 per year were covered by scholarships and grants." Appellant's Brief at 7. Father argues that "the dormitory was available for [C.S.] for at least 33 weeks out of the year and [C.S.] was at Mother's home only the remaining 19 weeks of the year." Id. at 8. Father further argues that the trial court placed him in a "Catch-22," that "[a]ccording to the Court, if [he] wanted to assert a reduction in support on the basis that room and board was largely paid by non-reimbursable financial aid then he would have to request that an education expense order be entered (since the court had persuaded [] Mother to not make such a request)," and that "if [] Father made such a request, he would necessarily be considered to be denying that [C.S.] had repudiated him." Id. at 10. Father also argues that "[i]t is apparent that the purpose of the court in making educational support a non-issue was so that the court could visit upon the Father a greater support obligation than could have been imposed otherwise." Id. at 11.

Before addressing the trial court's support calculation, we observe that this court has noted that while Indiana law recognizes that a child's repudiation of a parent under certain circumstances will obviate a parent's obligation to pay certain expenses, including college expenses, any such repudiation is not a "release of a parent's financial responsibility to the payment of child support . . . ." Lechien v. Wren, 950 N.E.2d 838,

6

845 (Ind. Ct. App. 2011) (citing Bales v. Bales, 801 N.E.2d 196, 199 (Ind. Ct. App. 2004), reh'g denied, trans. denied). "Payment of child support is not the legal equivalent of contributing to a child's college expenses." Id. "While there is statutory authority for a dissolution court to order either or both parents to pay sums toward their child's college education, there is no absolute duty on the part of parents to provide a college education for their children." Id. "In contrast, parents have a common law duty to support their children. This duty exists apart from any court order or statute. A parent's obligation to pay child support generally continues until the child reaches twenty-one years of age." Id. (citations omitted). Moreover, repudiation is not an acceptable justification to abate support payments for a child less than twenty-one years of age. Id.

Here, the trial court did not rule on whether C.S. has repudiated Father, and Father does not appear to argue on appeal that the court erred in not entering such a ruling.[5] We also observe that Mother did not request and the court did not enter an educational support order with respect to post-secondary educational expenses incurred by C.S. Thus we need not address the denial of Father's petition to terminate support based upon an alleged repudiation.

We turn next to whether the court erred in modifying Father's basic support obligation. Generally, the modification of a child support order is governed by Ind. Code § 31-16-8-1, which provides in part:

---

[5] The trial court stated at the June 16, 2011 hearing: "I don't want to hear evidence about repudiation unless there's a request for post secondary education expenses, [because] I don't think that [is] relevant under Indiana law . . . ." June 16, 2011 Transcript at 10-11. In his appellant's brief, Father states that "[t]here are no factual disputes (at least with respect to the issues the trial court considered, since the trial court did not consider the issue of repudiation)." Appellant's Brief at 6.

(a) Provisions of an order with respect to child support or an order for maintenance (ordered under IC 31-16-7-1 or IC 31-1-11.5-9(c) before their repeal) may be modified or revoked.

(b) Except as provided in section 2 of this chapter, modification may be made only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

(A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

In addition, the Indiana Child Support Rules and Guidelines (the "Support Guidelines") contain provisions related to the effect of a child living away from home while attending school upon a non-custodial parent's support obligation. Support Guideline 3(G), which sets forth adjustments to a parent's child support obligation, provides in part: "*If the parents have a child who is living away from home while attending school*, his or her child support obligation will reflect the adjustment found on Line J of the Post-Secondary Education Worksheet (See Support Guideline 8)." Ind. Child Supp. 3(G)(1) (emphasis added). Support Guideline 8(b) provides in part:

A determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. Room and board will also be included

when the student resides on campus or otherwise is not with the custodial parent.

The impact of an award of post-secondary educational expenses is substantial upon the custodial and non-custodial parent and *a reduction of the Basic Child Support Obligation attributable to the child in question will be required when the child resides on campus or otherwise is not with the custodial parent.*

(Emphases added). Support Guideline 8(c), which governs the use of the Post-Secondary Education Worksheet ("PSEW"), provides in part:

The [PSEW] makes two determinations. Section One determines the obligation of each parent for payment of post-secondary education expenses based upon his or her pro rata share of the weekly adjusted income from the Child Support Obligation Worksheet after contribution from the student toward those costs. The method of paying such obligation should be addressed in the court's order. *When the student remains at home with the custodial parent while attending an institution of higher learning, generally no reduction to the noncustodial parent's support obligation will occur and Section Two of the Worksheet need not be completed.*

*Section Two determines the amount of each parent's weekly support obligation for the student who does not live at home year round.* The amount attributable to the student while at home has been annualized to avoid weekly variations in the order. It further addresses the provisions of IC 31-16-6-2(b) which require a reduction in the child support obligation when the court orders the payment of educational expenses which are duplicated or would otherwise be paid to the custodial parent.

\* \* \* \* \*

Line E of the [PSEW] determines the percentage of the year the student lives at home. Line F is used to enter the Basic Child Support Obligation, from the Guideline Schedules for all of the children of the parties including the student who does not live at home year round. Line G is used to enter the amount of support for those children who are not living away from home.

9

(Emphasis added). In <u>Lechien</u>, we observed that "both Support Guidelines 3(G) and 8 expressly state that a parent's basic child support obligation will be reduced if or when the child is living away from home." <u>Lechien</u>, 950 N.E.2d at 846.

We note that, while the court's June 17, 2011 order did not set forth its calculation of Father's support obligation of $99 and did not attach a completed worksheet, at the June 16, 2011 hearing, the court verbally found Father's weekly gross income to be $714.40 and Mother's weekly gross income to be $863.37. Applying the child support worksheet and guideline schedules for weekly support payments to these weekly gross income amounts, without taking into account any adjustments including the fact that C.S. does not reside with Mother for a portion of the year, produces a recommended support obligation for Father in the amount of $99, which is the amount ordered by the trial court.

At the June 16, 2011 hearing, Mother indicated that C.S. attended Ball State University for her freshman year, that C.S.'s first day living on campus was about August 18, 2010, that prior to August 18, 2010 C.S. lived at home with Mother, and that C.S. moved back to live with Mother on May 5, 2011. Mother further testified that C.S. lived with her for three weeks in December and January and one week in March for spring break. In addition, Mother indicated that C.S. was living with her during the summer of 2011 until she returned to school in August. However, Mother also testified that C.S.'s schedule for the following semester was going to "be different because she's home every week" and that C.S. "will be home Thursday nights and go back either Sunday night or Monday morning." June 16, 2011 Transcript at 59-60. The trial court did not adjust or reduce Father's basic support obligation based upon the fact that C.S. did not reside with

10

Mother for a portion of the 2010-2011 school year or the fact that C.S. would not reside with Mother for a portion of the upcoming semester(s). This court has stated, as previously mentioned, that both Support Guidelines 3(G) and 8 expressly state that a parent's basic child support obligation will be reduced if or when the child is living away from home, Lechien, 950 N.E.2d at 846, and evidence was presented that C.S. was living away and planned to continue to live away from the home of Mother for a portion of the year.

Based upon the record and the Support Guidelines, we conclude that the trial court erred in failing to adjust Father's basic child support obligation based upon the fact that C.S. did not and does not reside with Mother for a portion of the year. This conclusion is consistent both with the general duty of a parent to provide support for a child until the child is twenty-one years old and the provisions of the Support Guidelines which provide for a reduction of support if the child does not continue to reside with the custodial parent. Accordingly, we reverse that portion of the trial court's June 17, 2011 order setting Father's weekly child support obligation at $99 and remand with instructions to calculate Father's basic child support obligation taking into account the number of weeks in the year C.S. does not reside with Mother to attend school,[6] to calculate any support arrearage or surplus, and to enter any other orders consistent with this opinion. Further, we encourage the trial court to attach a copy of a completed child support worksheet and

---

[6] While evidence was presented as to how many weeks C.S. did not reside with Mother during the 2010-2011 school year, and thus the court may calculate Father's support obligation for that period of time, the court may determine that additional evidence regarding the number of weeks C.S. did or does not reside with Mother during the 2011-2012 school year is necessary to calculate Father's current child support obligation.

11

PSEW in support of its support calculations and determinations to assist this court's ability to review child support orders or modifications. See Scott v. Scott, 668 N.E.2d 691, 704 (Ind. Ct. App. 1996) ("We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded. Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet.") (citation omitted).[7]

For the foregoing reasons, we reverse that portion of the trial court's June 17, 2011 order setting Father's weekly child support obligation at $99 and remand with instructions to calculate Father's weekly support obligation as set forth herein and for further proceedings consistent with this opinion. In all other respect, we affirm the court's June 17, 2011 order.

Affirmed in part, reversed in part, and remanded.

MAY, J., and CRONE, J., concur.

---

[7] Father also asserts that this court's previous holdings that repudiation will obviate a parent's obligation to pay certain expenses such as college expenses but not release the parent from the responsibility to pay child support violates the Equal Protection Clause of the Fourteenth Amendment. We need not address this argument because the trial court did not determine that C.S. has repudiated Father and Father does not appear to assert that the trial court erred in failing to do so.