## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 28 2018, 7:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David R. Phillips
Shaw Law Office
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

Debra Lynch Dubovich
Levy & Dubovich
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of

Paul A. Magura,

*Appellant-Respondent,*

v.

Lisa L. Magura,

*Appellee-Petitioner.*

March 28, 2018

Court of Appeals Case No.
64A04-1708-DR-1852

Appeal from the Porter Superior Court

The Honorable William E. Alexa, Judge

The Honorable Katherine R. Forbes, Magistrate

Trial Court Cause No.
64D02-0407-DR-5961

**Brown, Judge.**

[1] Paul A. Magura ("Husband") appeals the trial court's order finding that his former spouse, Lisa A. Magura ("Wife"), has paid him in accordance with the parties' marital settlement agreement and ordering him to pay attorney fees. We affirm.

## Facts and Procedural History

[2] On November 23, 2004, the trial court entered a dissolution decree which incorporated by reference a marital settlement agreement entered into by the parties. The marital settlement agreement provided in part that the parties owned two parcels of real estate, the "marital residence" and the "ranch house," in Porter, Indiana. Appellant's Appendix Volume 2 at 13. The agreement provided that the marital residence would be sold and set forth how the sale proceeds would be distributed.

[3] With respect to the ranch house, the agreement provided:

> *Ranch House*: The parties further agree and stipulate that Wife shall be awarded all right, title and interest to the "ranch house" . . . , and that she shall buyout [sic] Husband's interest in same by transferring to him the lump sum of Thirty-Thousand Dollars ($30,000.00), in consideration of any and all interest he may have had in said real estate. The parties' [sic] further agree that Wife shall be entitled to refinance the ranch house in order to obtain the necessary buy-out funds, and that Husband shall execute a Quit Claim Deed as part of the refinancing process or buy-out process. Wife shall remit the lump sum to Husband upon the closing of the refinancing concerning said property, or within one year from entry of the parties' Dissolution Decree, whichever shall first occur.

The parties further agree that Husband shall be entitled to reside in the "ranch house" for a period not to exceed one (1) year from the sale of the "marital residence" . . . , provided he assume full responsibility for timely payment of the real estate taxes, insurance, utilities and other expenses associated with the "ranch house" during said period of possession, and that he indemnify and hold Wife harmless therefrom. At the end of Husband's one year term of possession (or sooner, if he should fail to maintain timely payment of the obligations outlined herein), he shall peacefully surrender said property to Wife in a neat and orderly condition, ordinary wear and tear excepted. Husband shall assume financial responsibility for any damages caused to the property known as the "ranch house" during his period of possession, and shall indemnify and hold Wife harmless therefrom. Moreover, Husband shall not engage in, nor allow others to engage in, illegal activities on or about said property, and Wife shall be entitled to inspect said property from time to time upon reasonable notice to Husband.

*Id.* at 13-14. The settlement agreement also provided that any modification or waiver of any of the provisions of the agreement must be made in writing.

[4] Sometime in 2006, Wife moved into the ranch house with her daughter, her granddaughter, Husband, and their son. Husband moved out of the house in September of 2015. On October 14, 2015, Husband filed a petition for a temporary restraining order and a post-trial order.[1] The parties met for mediation in December 2015 and, after four hours of mediation, Husband left the building without notifying the mediator or the attorneys and did not return.

---

[1] This petition is not included in the appellant's appendix.

On June 26, 2017, the court held a hearing at which it admitted evidence regarding Wife's expenditures related to a vehicle, automobile insurance, and a cell phone for Husband and to real estate taxes, insurance premiums, and utility service for the ranch house and photographic evidence of the condition of the ranch house in 2015. Wife's counsel also requested time to submit an attorney fee affidavit, and the court stated the parties had forty-eight hours to file their affidavits. Wife filed an affidavit in support of attorney fees on June 28, 2017.[2]

On July 17, 2017, the court entered an order which provided:

1.     The Court finds that Wife owed to Husband the sum of $30,000.00 pursuant to the Parties' Marital Settlement Agreement.

2.     This Court is not modifying this obligation. However, the Court finds that Wife has paid to Husband well over the $30,000.00 amount. After the parties' divorced, the Wife purchased a vehicle for Husband, paid for the insurance on the vehicle for a number of years and paid for the Husband's cell phone for a number of years. The Court does not even have to consider all the expenses that Wife paid that Husband was Ordered to pay under the Agreement to reach the $30,000.00 amount owed.

3.     To Order Wife to now pay another $30,000.00 would unjustly enrich the Husband and would not be fair and equitable.

_____

[2] The record does not include a copy of the submitted affidavit.

4. Husband shall be responsible for contribution to Wife's Attorney fees in the sum of $2,800.00. Said sum is reduced to judgment . . . .

*Id*. at 23-24.

### *Discussion*

Husband claims that the trial court erred in not ordering Wife to pay him $30,000 and in ordering him to pay attorney fees. He asserts that his cohabitation with Wife did not terminate or alter Wife's monetary obligation under the settlement agreement, that Wife did not keep a contemporaneous accounting of the payments she made toward the vehicle, housing, and cell phone service, and that the court erred in concluding that Wife's contributions to the household during their cohabitation offset her obligation under the settlement agreement.

Wife maintains that the court did not err in determining that she had already paid Husband well over $30,000, that the debt was paid in full and Husband is not entitled to another $30,000, and that the record is replete with evidence supporting the court's ruling. She also maintains that, contrary to Husband's argument, the settlement agreement was not terminated or modified.

Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences

drawn therefrom to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* The findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.* Further, because Husband appeals a negative judgment, he must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact. *See Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), *trans. denied*.

[9] This Court has stated that, "[t]o prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust" and that "[p]rinciples of equity prohibit unjust enrichment of a party who accepts the unrequested benefits another provides despite having the opportunity to decline those benefits." *McMahel v. Deaton*, 61 N.E.3d 336, 345 (Ind. Ct. App. 2016) (citing *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct. App. 1995), *reh'g denied*), *trans. denied*.

[10] We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[11] At the June 26, 2017 hearing, Wife testified that the ranch house was still titled in her and Husband's names and that she had not paid Husband in a lump sum. She indicated that she was not trying to modify her obligation under the settlement agreement to pay Husband $30,000 but that she, in fact, had paid Husband the money in the form of purchasing him a truck, paying his vehicle insurance, and paying a cell phone on his behalf. Wife testified that Husband had indicated that he could not do much with $30,000 because he did not have a vehicle or a cell phone and, once he purchased those items, there would not be enough money on which he could live, and she testified that Husband was also afraid of relapsing to heroin and cocaine use.

[12] Wife testified that she spent $17,243.35 to purchase a GMC Sonoma for Husband, that Husband did not contribute in any way to the acquisition of the vehicle, and that her understanding when she purchased the vehicle was that the purchase constituted partial payment of the $30,000 that she owed him. Wife indicated that she agreed to provide Husband with insurance on his vehicle until he was able to find a job and insure the vehicle on his own, that Husband did not make any contributions toward the vehicle insurance costs until the date he moved out of the house in September of 2015, and that she spent approximately $6,945.97 in insurance payments for the vehicle. She further indicated that Husband requested that, in lieu of paying him the $30,000, she pay for his cell phone bill and that she spent $6,048.85 in cell phone service costs on Husband's behalf from the date of the dissolution decree

through the date he vacated the ranch house in September of 2015. Wife indicated that she expended a total of $30,238.17.

[13] Wife further testified that, pursuant to the settlement agreement, Husband was required to pay, during his possession of the ranch house, the real estate taxes, homeowners insurance, the utilities, and the maintenance expenses and that he was supposed to leave the property in good order and condition. She testified that, during Husband's occupancy from August of 2006 through September of 2015, he never contributed toward the real estate taxes and that she paid $27,760.52 in real estate taxes during the period of time he occupied the residence. When asked "[y]ou weren't gifting him a place to stay because the two of you were in love or trying to make this marriage work," Wife answered "[c]orrect." Transcript Volume II at 19. Wife indicated that it was fair to say that she and Husband lived together at the residence during that period of time, that she dated other people during that time, and she and Husband never reconciled during that period of time. Wife indicated that Husband never contributed toward the homeowners insurance and that she paid $12,133 in home insurance expenses on his behalf. She further indicated that Husband never paid NIPSCO or the water and sewer expenses and that, according to her records, she paid $14,282.66 in NIPSCO expenses and $6,277 through the Town of Porter and Waste Management during the period Husband occupied the ranch house.

[14] Wife also testified that Husband did not leave the property peacefully and that she had him evicted. She indicated that she and Husband lived in the ranch

house together with Wife's son and at times her granddaughter, of whom Wife had guardianship, from 2006 to about 2014 and that she vacated the property with the understanding that Husband "had one year to fix the property up that had gone into disrepair and not to use illegal drugs while he was there while [she] and [her granddaughter] moved to a property in Knox where [she] kind of kept her safe from what was happening in this home." *Id.* at 24. Wife testified that, when she returned in September of 2015, she took photographs of the condition of the property, there was a significant amount of hoarding, there were syringes and socks placed in random areas, it took almost a month to clean area by area, there was rotting wood and all sorts of debris, there had been a leak in the living room, the electrical box was rigged with extension cords, and insulation was falling down. She testified that the vast part of these problems occurred during the last year of Husband's occupancy from 2014 to 2015. The court admitted photographs of the housing depicting its condition. When asked if she had any idea what it would cost her to repair the home, Wife replied that she had been obtaining estimates and that "[i]t's well into the thousands." *Id.* at 27.

[15] Wife also testified that her older son had passed away in the military in 2003, she had guardianship of her granddaughter, she had multiple discussions with Husband about him moving out, that it usually started drama or chaos, that she "would get the drug thing thrown in [her] face," and that it was easier to just keep the peace. *Id.* at 29. She testified that she moved in the ranch house in 2006 because she had been paying a lot on rentals and yet was still responsible

for the bills on the ranch house. She indicated that, when she bought the truck, it was under both her name and Husband's name and that she did not place it in his name only because she had to insure it. Wife indicated that she did not have Husband sign a receipt or make a ledger to keep track of all of the payments toward her obligation. She testified that, on numerous occasions between 2010 and 2014 or 2015, she told Husband that her obligations were complete and that he needed to move out.

[16] Husband testified that he moved back into the ranch house around 2006 and that his understanding was that he and Wife were going to attempt to reconcile, and that it felt to him like the divorce never happened. He testified that Wife had a good career, she was making most of the money, he worked on the side doing remodeling when he could, a lot and some of his work was for cash, he used salvaged materials to fix the house, when he did have some money he would use it for the family, and that he would cook and do some cleaning. He testified that the truck was used for camping trips and was not used just for his personal use, that Wife had access to it anytime, and that he was on the title for Wife's vehicle as well. He indicated there was never any discussion that Wife's expenditures to purchase the vehicle, the insurance, or the cell phone were going toward her obligation under the settlement agreement. The court admitted exhibits related to the vehicle and homeowners insurance bills, the cell phone bills, the utility bills, and the property taxes.

[17] To the extent Husband suggests that the trial court found that the parties' cohabitation terminated or modified Wife's obligation under the settlement

agreement, we observe that the court's order specifically states "[t]his Court is not modifying this obligation" and found that Wife made the required payment to Husband. Appellant's Appendix Volume 2 at 23. The court thus determined that Wife performed her payment obligation under the settlement agreement. The trial court found that Wife has paid Husband "well over the $30,000.00 amount" she owed him under the settlement agreement. *Id*. The court entered specific findings that Wife purchased a vehicle for Husband and paid for the insurance on the vehicle and Husband's cell phone for a number of years.

[18] The evidence presented at the June 26, 2017 hearing supports the trial court's findings. Wife presented evidence that she paid a total of over $30,000 for a GMC Sonoma, the insurance premiums for the vehicle, and a cell phone for Husband. She also presented evidence that she paid over $60,000 in real estate taxes, homeowners insurance, and utilities for the ranch house during the time Husband occupied the property. Wife testified that Husband did not contribute to these vehicle or housing expenses, and Husband indicated that Wife had a good career and made most of the money.

[19] As for the suggestion that Wife's expenditures on behalf of Husband were gifts due to cohabitation, reconciliation, or otherwise, the trial court was able to assess the credibility of the witnesses and their respective testimony, including the conflicting testimony. Husband effectively lived expense-free for numerous years after the entry of the dissolution decree because Wife made all payments associated with his housing, transportation, and cell phone. Further, while Wife may have benefited from the nonmonetary and relatively small monetary

contributions of Husband to some extent during the parties' cohabitation, the record establishes that Husband benefited substantially from the monetary resources and contributions provided by Wife during that time. Based upon the record, we cannot conclude that the trial court's findings that Wife paid Husband the amount owed under the settlement agreement and that to order Wife to pay another $30,000 would unjustly enrich Husband are clearly erroneous or that the court erred in finding that Husband is not entitled to further payment under the settlement agreement. Husband has not shown that the evidence points unerringly to a conclusion different from that reached by the trier of fact.

[20] With respect to the court's attorney fee award of $2,800, the record reveals that Husband lived in the ranch house for numerous years after the dissolution decree during which time he essentially lived expense-free as Wife made all payments associated with his transportation, housing, and cell phone, that Husband did not leave the property peacefully and had to be evicted in September of 2015, and that he walked out of mediation without informing the mediator or the attorneys. We cannot say, based upon the record and under the circumstances, that the trial court abused its discretion in entering an attorney fee award in favor of Wife.

## Conclusion

[21] For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

Bailey, J., and Crone, J., concur.