# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2018, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

ATTORNEY FOR APPELLEE

Steven A. Holt
Holt Legal Group
Noblesville, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Michael Farrell,

*Appellant-Petitioner*,

v.

Elva Farrell,

*Appellee-Respondent*.

February 15, 2018

Court of Appeals Case No.
29A05-1709-DR-2045

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1602-DR-1499

**Brown, Judge.**

[1] Michael Farrell ("Father") appeals from the trial court's decree of dissolution and raises issues related to the court's orders with respect to child custody, the division of marital property, the parenting coordinator, child support, and spousal maintenance. We affirm in part, reverse in part, and remand.

*Facts and Procedural History*

[2] Father and Elva Farrell ("Mother") were married in February of 1998 and have seven minor children, two of whom have special medical needs. On February 19, 2016, Father filed a petition for dissolution. In March 2016, the court entered a preliminary order stating in part that the parties agreed to have joint legal custody and Mother would have physical custody, Father would receive parenting time including two of the children overnight at his residence every other Saturday, Mother would continue to use the joint credit card to pay for the children's needs and Father would pay the balance each month in lieu of child support, Father would provide Mother with two hundred dollars each week, and Mother would receive an early distribution of $20,000. Each of the parties later asked the court to find the other party in contempt. On December 1, 2016, at Father's request, the court appointed a parenting coordinator, Dr. Randy Krupsaw, and ordered Father to pay the cost of the coordinator's services.

[3] On August 28, 2017, the court issued a thirty-two-page decree of dissolution containing findings and conclusions and attached a child support obligation worksheet. The decree ordered the parties to continue to share joint legal custody and that Mother would have physical custody of the children. With

respect to the division of the marital property, the court determined that "the marital estate should be split 60/40." Appellant's Appendix Volume 2 at 66. The court also entered findings regarding parenting time and the parenting coordinator, child and educational support, spousal maintenance, the motions for contempt, and attorney fees. Father appeals from the dissolution decree.

[4]     On September 20, 2017, Mother filed a motion to clarify certain findings in the decree. Father filed an objection arguing the trial court did not have jurisdiction to consider Mother's motion to clarify. The court entered a Judge's Entry of October 13, 2017, stating that Mother's motion to clarify was denied and "[t]he Court will not rule until the appeal is completed or if the appeal is stayed and remanded to the Court so the Court may reconsider or clarify." Appellee's Appendix Volume 2 at 17. On November 6, 2017, Father filed an emergency motion to appoint Darin Elizabeth Cox as the parenting coordinator and to order that Father have custody, and the court entered a Judge's Entry of November 13, 2017, stating it would not rule until the appeal is completed or the appeal is stayed. On November 16, 2017, Father filed an amended emergency motion to appoint Cox as the parenting coordinator which stated that Dr. Krupsaw notified the parties and the court that he was withdrawing from the case, that the court's December 1, 2016 parenting coordinator order is not being appealed, and that the court may appoint a new parenting coordinator. The court signed a Judge's Entry of December 6, 2017, which states that the parties appeared telephonically by counsel on Father's amended emergency motion, that the court "agreed to appoint Darin Elizabeth Cox as

the new Parenting Coordinator if the parties can agree as to the scope of her responsibilities," and "[i]f the parties cannot agree, parties shall submit to the Court their requests and any objections concerning the responsibilities of the Parenting Coordinator." Judge's Entry of December 6, 2017.

## *Discussion*

Father challenges various findings and orders in the trial court's dissolution decree related to child custody, division of the marital property, the parenting coordinator, child support, and spousal maintenance. Where a trial court enters findings of fact and conclusions of law, first we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.* The findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.*

### A. *Legal Custody*

Father first argues that the trial court's findings do not support an award of joint legal custody. He argues that the court's findings indicate the parties are not

willing and able to communicate and cooperate in advancing the children's welfare. He also notes the court's contradictory statements that the parties share legal custody but that Mother would have sole custody for purposes of final decision-making. Mother responds that the court did not find either party to be in contempt, the evidence is undisputed that both parties care about their children, and that Father has not shown he is capable of caring for the seven children while working full time.

[7] Child custody determinations fall squarely within the discretion of the dissolution court and will not be disturbed except for an abuse of discretion. *Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008). Ind. Code § 31-17-2-13 provides that "[t]he court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child." Ind. Code § 31-17-2-15 provides:

> In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
>
> > (1) the fitness and suitability of each of the persons awarded joint custody;
> >
> > (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
> >
> > (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

[8] "'Joint legal custody', for purposes of . . . IC 31-17-2-13 . . . and IC 31-17-2-15, means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Ind. Code § 31-9-2-67.

[9] The trial court found that each of the parties requested sole legal custody of the children. Father's request was based on his contention that Mother was restricting and trying to eliminate his parenting time, and Mother asserted that, because she does not have employment outside the home, she is in the best position to provide daily care and manage the extensive medical and school appointments as she has done for the parties' entire marriage.

[10] The court noted that a custody evaluator testified that Mother was an alienator, that this was emotional abuse to the children, and found that if her behavior continues Father should have sole physical and legal custody of the children. It noted that the evaluator stated that Mother is a hostile person who competes with others and is resentful, is high-conflict and places the children in a loyalty

bind, and interferes with Father's parenting time. The court found that Mother uses intimidation tactics, the children fear her anger, she has unrealistic standards and lacks empathy, and she causes a struggle for Father to exercise parenting time. The court noted that Dr. Krupsaw's testimony that "'we might need one decision maker' after he testified Mother had made significant unilateral medical decisions." Appellant's Appendix Volume 2 at 52. The court found that the significant medical conditions of two of the children require Mother's management of numerous medical appointments, therapies, and care. Mother has been a homemaker since 1998 when she married Father.

[11] The court noted that Mother contended Father disregarded the children's feelings and medical needs exemplified by his aloofness regarding a lost dog, his sending the children to church by themselves, his taking one of the children out of lunch at school to record him and question him about Mother's behavior, his disregard of an allergic reaction and medical condition of another child, and his disregard for one of his children's reputation and feelings by going to the child's work and questioning his managers about the child's work schedule. The court noted that Father's testimony that he did not even consider how the child would feel if Father went to the child's work speaking about family concerns. It found that Father has never at any time in his or the children's lives had full-time responsibility of all seven children at once and has never shown that he has the capability of doing so. The court further found that Father does not have any pathology, has been involved with homework, school, church, coaching, and transportation, thinks rationally and has good insight, and watched one of

the children for seven of eight months while Mother was in Ecuador. It found that Father has obtained another van, has handicap equipped his home, is able to care for the children, can follow rules and supports Mother and the rules.

[12] The court ordered Father and Mother to adopt a responsible policy regarding the making of decisions with respect to the children, that they mutually share in all parental responsibilities and decision-making for the children except for routine decisions, and that other decisions will be made only after a consultation between the parties except in the case of an emergency, and that if the parents disagree on non-routine decisions they will consult with the parenting coordinator. The court set forth orders regarding the scheduling of appointments and school activities. Although each party requested the court to find the other in contempt, the court declined to find either in contempt. We cannot say that the trial court's findings, including its findings regarding the parties' respective roles in parenting, behavior, and decision-making, as well as the fact the court did not find either party in contempt, do not support its decision to award the parties joint legal custody of the children.

[13] Although we do not disturb the court's award of joint legal custody, we observe the decree states that "[t]he parties shall consult with each other through meeting with the Parenting Coordinator, and reach agreements on any issues regarding the minor children specifically, but not limited to, the children's health, care, education, and religious training, *with Mother having sole custody for purposes of final decision making*." Appellant's Appendix Volume 2 at 68 (emphasis added). Also, we note that the court, in Paragraph 50 of the decree,

found that Mother "will not be held in Contempt at this time in the hope that the parties may proceed for the best interests of the children, except as a sanction for [Mother's] contempt, [Father] *shall have the final decision on any joint legal decisions if the parties cannot agree*" and, "[i]f [Mother] disagrees with [Father's] decisions, she can discuss it with Dr. Krupsaw, after discussing with [Father] in writing." *Id*. at 46 (emphasis added). We remand for an amended order which does not grant either party decision-making authority inconsistent with the award of joint legal custody and, as the court did not find Mother in contempt, does not impose sanctions for contempt.

B. *Findings Regarding the Parenting Coordinator and Overnights*

[14] Father claims the trial court abused its discretion in ordering him to pay the costs of the parenting coordinator and in delegating the determination of additional parenting time to the parenting coordinator. The trial court found that Mother does not have employment or an income and has primary physical custody of the children. We cannot say the court abused its discretion in ordering Father to pay the costs of the parenting coordinator under the circumstances. The court entered a parenting coordinator order on December 1, 2016, at Father's request which appointed Dr. Krupsaw as the coordinator and set forth the coordinator's obligations and authority, specifically ordering that the coordinator shall not exercise judicial authority. In the decree, the court provided that Father would continue to have alternating weekends of parenting time and mid-week parenting time as described in its preliminary orders and that Father would have additional parenting time as directed by the

parenting coordinator so as to strengthen the children's bond with him. However, in its December 6, 2017 order, after Father noted that Dr. Krupsaw had notified the parties and the court that he was withdrawing from the case, the trial court appointed Cox as the new parenting coordinator "if the parties can agree as to the scope of her responsibilities" and ordered that, if they could not agree, the parties shall submit their requests and objections and the court would enter a ruling. Judge's Entry of December 6, 2017.

[15] Father also argues that he was awarded 183 overnights and that it was error to award Mother physical custody when the parties have equal overnights, and that the decision is contrary to the best interests of the children and the evidence. Mother responds that Father was given 183 overnights for purposes of calculating his support obligation and that the designation was not a determination of parenting time. The preliminary order of March of 2016, states that the parties agreed that Husband "shall come to the house every other Saturday to exercise parenting time with the children from 8am to 4pm" and that "every other Saturday, [Father shall] have two children overnight at his residence overnight." Appellant's Appendix Volume 2 at 71. The decree provided in part that Father would continue to have alternating weekends of parenting time and mid-week parenting time. Mother has been a full-time homemaker since 1998 when she married Father, Father is a mortgage broker and has employees, and the court found that Father has not had full-time responsibility of all seven children at once. Further, the decree orders that, "*for child support purposes*, . . . Father should receive credit for 183 overnights." *Id*. at

59 (emphasis added). We cannot say that the decree effectively awarded Father joint or shared physical custody of the children or that the court erred or abused its discretion in awarding Mother physical custody of the children.

### C. *The Trial Court's Division of the Marital Property*

[16] Father challenges the trial court's division of the marital estate and argues there is no basis for the court's division and it erred in identifying and determining the value of certain property. He argues that these errors, together with the court's order that he pay certain expenses incurred by Mother, resulted in awarding Mother most of the marital property.

#### 1. *Basis for Division*

[17] The dissolution decree provides:

> Indiana Dissolution cases are brought in equity and the presumption is for a 50/50 or equal split of the marital property. However, where one party is unable to work due to disability or lack of education or responsibility for caring for a disabled child, the 50/50 presumption is often varied. With consideration for the facts of this case, [Mother] would request a 70/30 split of the marital estate for the reasons outlined above. The Court would find, though, that the marital estate should be split 60/40.

*Id*. at 66. The decree contains a schedule of the parties' assets including their real estate, personal property, vehicles, bank and retirement accounts, a business checking account, and business fixtures and equipment and divides the property between the parties.

[18]  Father asserts the record is devoid of evidence that Mother is unable to work due to a disability or a lack of education, states that according to the custody evaluation Mother completed two and one-half years of college studying economics, cites to the testimony of a nurse and argues the parties have a nurse who is with their child four to five days a week and that Mother can work while the nurse watches the child, and claims that, "[a]s such, there was no basis for a 60/40 split." Appellant's Brief at 19.

[19]  The division of marital property is within the sound discretion of the trial court, and we will reverse only for an abuse of discretion. *Love v. Love*, 10 N.E.3d 1005, 1012 (Ind. Ct. App. 2014). When we review a claim that the trial court improperly divided marital property, we must consider only the evidence most favorable to the court's disposition of the property. *Id*. Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id*.

[20]  The court in a dissolution action shall divide the property of the parties in a just and reasonable manner. Ind. Code § 31-15-7-4. The court shall presume that an equal division of the marital property between the parties is just and reasonable, but this presumption may be rebutted by a party who presents relevant evidence that an equal division would not be just and reasonable. Ind. Code § 31-15-7-5. In making this determination, the court may consider evidence regarding the following factors: the contribution of each spouse to the acquisition of the property; the extent to which the property was acquired by each spouse before the marriage or through inheritance or gift; the economic

circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children; the conduct of the parties during the marriage as related to the disposition or dissipation of their property; and the earnings or earning ability of the parties. *Id.* The court is not required to explicitly address each factor. *Love*, 10 N.E.3d at 1012.

[21] The trial court's division of marital property is "highly fact sensitive." *Id.* A trial court's discretion in dividing marital property is to be reviewed by considering the division as a whole, not item by item. *Id.* We will not weigh evidence, but will consider the evidence in a light most favorable to the judgment. *Id.* A trial court may deviate from an equal division so long as it sets forth a rational basis for its decision. *Id.* A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute. *Id.* at 1012-1013. Thus, we will reverse a property distribution only if there is no rational basis for the award. *Id.* at 1013.

[22] It is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. *Id.* at 1013; Ind. Code § 31-15-7-4(a). This one-pot theory ensures that no asset is excluded from the trial court's power to divide and award. *Love*, 10 N.E.3d at 1013.

[23] The trial court in this case awarded Mother physical custody of the parties' seven minor children, two of whom the court found have life-long special medical needs which require Mother's management of numerous medical appointments and therapies. The court found that the demands presented by the conditions of two of the children make it unreasonable to expect Mother to seek employment outside the home. The nurse whose testimony Father cites stated that she was with one of the children four to five days a week for about ten hours on average, and she additionally testified regarding the child's conditions, required care, and need for supervision, that sometimes she will work less if Mother is finished taking the other children to appointments, and that some days she will work longer so that Mother can go to activities and church events. The custody evaluation report to which Father cites states that Mother has been a wife, mother, and homemaker since 1998, has limited work experience, had an internship at a bank in high school, was a full-time student in college studying economics, and was a housekeeper at a hotel for four months. Mother has no earnings, Father is a self-employed mortgage broker with employees, the court determined that his weekly gross income is $4,410, and it awarded him the assets of the business.

[24] The court admitted evidence regarding each of the parties' parental responsibilities, economic circumstances, and earnings or earning ability. Father has not overcome the strong presumption that the court considered and complied with the applicable statute or demonstrated that there is no rational basis for the court's division. We cannot say the court abused its discretion in

determining that Mother should be awarded sixty percent of the marital property.

### 2. *Valuation*

[25] Father asserts the trial court determined the value of the marital property as of dates near the February 19, 2016 filing of the dissolution petition for most assets, but selected valuation dates of September 2016 for his business checking account and March 2017 for the parties' 2010 vehicle, and argues that the different dates result in extremely different values without any reasoning. He also argues that the court's valuation of his business checking account did not account for payroll or tax liabilities. Mother replies that Father refused the valuation of his business as part of the marital estate and was given all of the assets of his business.

[26] The trial court's valuation of marital assets will be disturbed only for an abuse of discretion. *Morey v. Morey*, 49 N.E.3d 1065, 1069 (Ind. Ct. App. 2016). As long as the evidence is sufficient and reasonable inferences support the valuation, an abuse of discretion does not occur. *Id.* We will not weigh the evidence and will consider the evidence in the light most favorable to the judgment. *Id.* Although the facts and reasonable inferences might allow for a different conclusion, we will not substitute our judgment for that of the trial court. *Id.*

[27] A trial court has broad discretion in determining the date upon which to value marital assets. *Wilson v. Wilson*, 732 N.E.2d 841, 845 (Ind. Ct. App. 2000),

*trans. denied.* For purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Id.* There is no requirement in our law that the valuation date be the same for every asset. *Id.*

[28] The court's division of the marital estate includes a schedule of the parties' real estate, personal property, vehicles, retirement accounts, a business checking account, and business fixtures and equipment, and the court determined the value of a 2010 vehicle to be $16,000 and the value of the business checking account to be $153,032.39.

[29] As for the vehicle, Mother and Father filed financial declarations which indicated the vehicle had a value of approximately $30,000. However, at the final hearing, Mother introduced a vehicle report dated March 16, 2017, which indicated the vehicle's trade-in price was $14,420, its private seller price was $15,593, its dealer price was $16,915, and its original MSRP was $39,820. Mother testified that she believed the vehicle's value was approximately $16,000 based on the report. When asked if the vehicle had been converted for about $10,000 to make it wheelchair accessible, Mother indicated that the modification was paid by a Medicaid waiver and not by the parties and that she did not believe the vehicle report gave a credit for the lift. When asked how much the conversion cost, Mother replied she believed the Medicaid waiver paid around $14,000. The court's decree found that the value of the 2010 handicapped equipped vehicle was $16,000. The court was able to consider the vehicle report, the age of the vehicle, and the testimony regarding the

modification to the vehicle and the approximate expense paid by governmental funds for the modification. We cannot say that the court abused its discretion in determining the vehicle's value for purposes of dividing the marital estate.

[30] With respect to the business checking account, the record reveals that Father is a self-employed mortgage broker, and the court determined that his weekly gross income for purposes of calculating his child support obligation is $4,410. Father introduced a bank statement for his business checking account for the period ending February 29, 2016, and the statement indicates that the ledger balance as of February 19, 2016 was $53,893.72. Mother introduced a bank statement for the account for the period ending September 30, 2016, which showed that the ledger balance on that date was $153,032.39. Father's counsel argued that the September statement showing a ledger balance of approximately $153,000 was dated seven months after the filing of the dissolution petition. Mother's counsel argued that the business was her business as well, that it was not unfair to discuss the $153,000 balance in any month, and that Father had not given Mother any share of the proceeds of the business since he walked out of the house or any of the 2015 proceeds. Father's counsel replied that Father owns the business by himself and Mother's name is not on the business.

[31] In addition to the February and September 2016 bank statements, the court admitted Father's income tax returns for 2013 through 2015, two business credit card statements, a transaction summary showing the business's payroll transactions for February 25 and 26, 2016, and certain portions of the business's 2015 tax return. Father's income tax returns indicate that the business was

organized as an S-corporation and that he reported his W-2 wages and Schedule E income from the business, including income in 2015 of W-2 wages of $77,067 and Schedule E business income of $177,571. Father's 2015 tax return indicates, with respect to his tax payments, that in addition to his W-2 withholding he had made estimated tax payments or applied an amount from his 2014 return and would receive a tax refund. The custody evaluation report states that Father started his company in 2006 and has eight employees, and when asked the size of his team Father replied there were eight of them altogether. The payroll transaction summary shows the business's payroll obligations for February 25 and 26, 2016, Father testified that payroll for the business occurred weekly and that the payroll obligations were taken out of the bank account, and the business checking account statement for February 2016 reflects the February 25 and 26, 2016 payroll transactions as well as other payroll transactions.

[32]  The court was able to consider the increase in value in the business checking account from February through September of 2016 and the evidence related to Father's taxes and the business's payroll practices. We cannot say that the court abused its discretion in selecting the date of valuation and in determining the value of the business checking account for purposes of dividing the marital estate or that the evidence does not support the court's determination.

[33]  While we do not disturb the trial court's determinations regarding the values of the 2010 vehicle and the business checking account, we observe that Father also argues that the court included a joint bank account with a balance of $1,000 in

its schedule of assets which does not exist, that a vehicle loan balance was improperly reduced, and that the court did not include his business credit cards in its schedule of the marital property. We note that the parties' financial declarations did not indicate that the parties had a joint account containing $1,000. As for the vehicle loan, the court's schedule of marital property includes an amount for a loan on a Honda Odyssey for $10,500, but the monthly statement for the loan dated March 16, 2016, which was admitted into evidence, indicates that the payoff amount was $13,227.93. Also, Father presented evidence of business credit cards, one with a balance of $940 and the other with a balance of $9,980.94. On remand, the trial court's amended decree should include a schedule of marital property which does not include any bank account for which evidence was not presented; it should include any business credit card balances which reduce the value of the marital estate; and it should includes a balance for the loan associated with the Honda Odyssey which reflects the evidence presented.[1]

3. *Ordered Payments*

[34] Father also argues that the trial court failed to identify certain credit card debts and other expenses as liabilities and that, if these and other expenses the court

---

[1] Father also argues the court rounded the advance Mother received from $20,320.52 to $20,000. Father introduced a statement showing the balance in a trust account of $20,320.52 and indicated that it was an account from which Mother was to take $20,000 and that to his knowledge she had $20,320.52. Mother testified that she received the $20,000 advance, Father's counsel stipulated that Father advanced Mother $20,000, and the court included an advance in the amount of $20,000 in its schedule of assets. We do not disturb the value the court assigned to the advance.

ordered him to pay were considered as liabilities, then the court's order would be assigning about ninety-four percent of the marital estate to Mother. Mother argues that the credit cards to which Father refers were used to pay for the children's expenses, that Father was responsible for reimbursing Mother for those expenses, and that she should not have the responsibility of paying part of the child support debt owed to her by paying part of that credit card debt.

[35] The preliminary order provided that, "[i]n lieu of an official child support award, the parties agree that [Mother] shall continue to use the joint credit card to pay all of the children's needs and [Father] shall pay the balance each month." Appellant's Appendix Volume 2 at 72. The dissolution decree ordered Father "to pay off the balance of the expenses for the Capitol One credit card ending in #9025" and "to pay [Mother's] personal credit card in the amount of $33,991.80 which was for expenses she had paid on her personal credit card for the children." *Id*. at 65. To the extent the credit card balances which the court ordered Father to pay constituted expenses attributable to the children's care which the court previously ordered him to pay in lieu of child support, the court did not err in ordering Father to pay off those credit card balances and in not including the credit card debt in the property to be divided between the parties.

[36] To the extent Father argues that the court's order that he pay a portion of Mother's attorney fees and other litigation expenses resulted in assigning her more than sixty percent of the marital property, we observe that Ind. Code § 31-15-7-4 provides for the division of the marital estate and Ind. Code § 31-15-10-1

provides that the court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under Ind. Code §§ 31-15 and for attorney fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment. Father does not point to authority for the proposition that an order for attorney fees or litigation expenses, or other custody evaluation or parental coordinator fees, must be apportioned in the same proportions as the marital estate. The trial court has broad discretion in awarding attorney fees. *Barton v. Barton*, 47 N.E.3d 368, 377 (Ind. Ct. App. 2015), *trans. denied*. The court must consider the parties' resources, economic conditions, abilities to earn adequate income, and other factors that bear on the reasonableness of the award. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). The court ordered Father to pay Mother's attorney fees and found that the billing total was $47,094.50 and that there were other expenses. The court also ordered that Mother be responsible for any other attorney fees or expenses due and $23,900 in outstanding attorney fees or expenses due to her prior attorney. Under the circumstances, including the disparity in the parties' incomes, we cannot say that the court's order as to attorney fees and expenses is unreasonable.

D. *Child Support and Spousal Maintenance*

[37] Father also challenges the trial court's child support and spousal maintenance orders. The decree, in its findings of fact, provides:

95. [Mother] presented evidence [of] [her] weekly gross income was $0.00 and [Father's] weekly gross income was $4,410.00. . . . This Child Support Worksheet (see attached) resulted in [Father] paying weekly child support to [Mother] in the amount of Seven Hundred Fifty dollars and Seventy-five Cents ($750.75)

\* \* \* \* \*

98. [Mother] has requested $5,000.00 per month in maintenance; as the demands presented by [two of the children's] conditions make it unreasonable to expect [Mother] to seek employment outside of the home . . . . Due to the significant medical conditions of some of the children that require [Mother's] management of numerous medical appointments, therapies and care; she is unable to be employed outside of the home and cannot be attributed or imputed any income at this time. The Court finds that such request should be DENIED in part, but GRANTED in part as Two Thousand dollars ($2,000.00) per month for maintenance.

\* \* \* \* \*

100. [Father] to be responsible for paying the book bill at Saint Maria Goretti School for the children.

\* \* \* \* \*

103. [Mother] will apply for school vouchers for the children to attend St. Theodore Guerin Catholic High School and will have sole responsibility for any additional tuition expenses.

\* \* \* \* \*

108. Neither party may dissipate the children's 529 accounts; those accounts and all funds in them will be preserved for the children's secondary education.

\* \* \* \* \*

111.    Concerning secondary education or college for the children, the 529 Funds shall be applied, and the children will apply for scholarships and/or Federal Financial Aid for grants, and/or contribute one third of the costs of the education.  After determinations of such amounts, [Father] will pay the remainder of any unpaid college cost.

Appellant's Appendix Volume 2 at 59-61.  In its conclusions of law, the decree provides:

> [Per] Indiana Code 31-15-7-2(2)(A) and (B) regarding spousal maintenance allow[s] for reasonable maintenance to be provided if the spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forgo employment; the Court may find that maintenance is necessary for the spouse in an amount and for a period of time that the court considers appropriate; . . . the Court finds that it is proper to award caregiver maintenance for a spouse who must care of [sic] an incapacitated child.  The Court finds that [Mother] lacks sufficient property, including marital property apportioned to her to provide for her needs; and [Mother] is the custodian of a child whose physical or mental incapacity requires [Mother] to forgo employment.  Thus, [Mother] meets the elements in IC 31-15-7-2(2) necessary for the Court to grant her spousal maintenance at this time.

*Id*. at 66.

[38]    Father argues Mother has the ability to work and should not have been awarded maintenance.  He notes the court ordered him to pay $750.75 per week in child support and $2,000 per month in maintenance and argues that, while he received limited assets and almost all debts, Mother was awarded the house and essentially all the retirement accounts, and the result is that Mother

has significantly more assets from which to pay for college. He further argues that, even if he is required to pay for college, the court should limit college to four consecutive years at an in-state university after the child pays one-third and giving Mother an appropriate share using either minimum wage or spousal maintenance as income, which should be recalculated in each child's senior year. Mother argues that her responsibilities for the disabled children prevent her from working outside the home and that was the basis for the court's maintenance award.

[39] With respect to child support and the fact that Mother does not work outside the home, we note that the Commentary to Child Support Guideline 3A discusses potential income and provides in part:

> Potential income may be determined if a parent has no income . . . and is capable of earning income or capable of earning more. Obviously, a great deal of discretion will have to be used in this determination. . . . The six examples which follow illustrate some of the considerations affecting attributing potential income to an unemployed or underemployed parent.
>
> > (1) When a custodial parent with young children at home has no significant skills or education and is unemployed, he or she may not be capable of entering the work force and earning enough to even cover the cost of child care. Hence, it may be inappropriate to attribute any potential income to that parent. It is not the intention of the Guidelines to force all custodial parents into the work force. Therefore, discretion must be exercised on an individual case basis to determine if it is fair under the circumstances to attribute potential income to a particular nonworking or underemployed custodial parent. The need

for a custodial parent to contribute to the financial support of a child must be carefully balanced against the need for the parent's full-time presence in the home.

[40] The court found that the demands presented by the conditions of two of the parties' children make it unreasonable to expect Mother to seek employment outside the home and that due to the significant medical conditions that require Mother's management of numerous medical appointments, therapies, and care, she is unable to be employed outside of the home. We cannot say that the trial court abused its discretion in not assigning potential income to Mother and do not disturb the court's use of Mother's weekly gross income of zero dollars in its child support obligation worksheet in determining Father's support obligation.

[41] With respect to spousal maintenance, Ind. Code § 31-15-7-2 provides in part that, if the court finds that "a spouse lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's needs" and "the spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forgo employment," then the court "may find that maintenance is necessary for the spouse in an amount and for a period of time that the court considers appropriate." The court found that, due to the significant medical conditions of the children that require Mother's management of numerous medical appointments, therapies, and care, she is unable to be employed outside of the home. She did not receive significant liquid assets. Father does not dispute, and the record supports, the court's

findings with respect to the children's special medical needs. We cannot say the court abused its discretion in awarding spousal maintenance.

[42] To the extent Father contests the court's order related to college expenses, we note that the Commentary to Ind. Child Support Guideline 8 provides that it is discretionary with the court to award post-secondary educational expenses and in what amount and that, in making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense. The Commentary further provides that, when determining whether or not to award post-secondary educational expenses, the court should consider each parent's income, earning ability, financial assets, and liabilities. It provides that the court should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program, that the court should take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student, and that these latter sources should be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to the parents' shares of the education expense.

[43] The decree orders: "[T]he 529 Funds shall be applied, and the children will apply for scholarships and/or Federal Financial Aid for grants, and/or

contribute one third of the costs of the education. After determinations of such amounts, [Father] will pay the remainder of any unpaid college cost." Appellant's Appendix Volume 2 at 61. According to this order, the children must pay for one-third of the costs of their college educations either directly or through scholarships or grants, and Father must pay the remainder of the unpaid college expenses after application of the 529 Funds and the children's required contribution. We cannot say the court abused its discretion in entering these post-secondary educational support provisions.

[44] We further observe that the Commentary to Support Guideline 8 provides that "[t]he court should require that a student maintain a certain minimum level of academic performance to remain eligible for parental assistance and should include such a provision in its order" and "[t]he court may limit consideration of college expenses to the cost of state supported colleges and universities or otherwise may require that the income level of the family and the achievement level of the child be sufficient to justify the expense of private school." On remand, the court may in its discretion consider including additional provisions in its amended decree which clarify its post-secondary educational expenses support order to reflect these and Father's requested considerations.

[45] Nothing in this opinion is intended to preclude either party from later requesting modification of the trial court's amended decree based upon changed incomes or circumstances as appropriate.

### *Conclusion*

[46]     For the foregoing reasons, we affirm in part, reverse in part, and remand for an entry of an amended decree consistent with this opinion without the necessity of holding any further hearing.

[47]     Affirmed in part, reversed in part, and remanded.

Baker, J., and Riley, J., concur.